**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Dwight Schackart, ) | No. CV-03-287-TUC-DCB |
| ) Petitioner, ) | DEATH PENALTY CASE |
| ) vs. ) | |
| ) ) | **ORDER** |
| Dora Schriro, et al., ) | |
| ) Respondents. ) | |
| ) | |

Pending before the Court is Petitioner's Renewed Motion for Discovery and Evidentiary Hearing, regarding Claims 5 and 6(a). (Dkt. 86.)[1] Respondents filed a response, and Petitioner filed a reply. (Dkts. 87, 90.) The Court previously granted in part and denied in part the request for discovery (*see* Dkt. 91), and in this Order rules on the request for evidentiary hearing.

In Claim 5, Petitioner alleges that his rights to a fair and impartial jury were violated because his guilt was determined by jurors in possession of a newspaper report of Petitioner's attempt to plead guilty before trial. In Claim 6(a), Petitioner asserts ineffective assistance of counsel (IAC) at trial based on counsel's alleged failure to develop a proper factual record regarding the alleged juror misconduct.

---

[1] "Dkt." refers to the documents in this Court's case file.

## **BACKGROUND**

At the end of closing arguments for Petitioner's trial, the judge asked juror Nancy Cutcher to approach the bench because defense counsel had informed the court that she had a newspaper in her possession. (RT 3/16/85 at 118.)[2] Juror Cutcher stated that she had been looking at the newspaper every day but had not been reading about the trial because the judge had told them not to do so. (*Id.* at 118-19.) The court asked her to leave the newspaper in the jury box. (*Id.* at 119.) Defense counsel then put on the record that the first page of her newspaper contained an article about Petitioner's unsuccessful attempt to plead guilty. (*Id.* at 123-24.) Counsel moved for a mistrial, which was summarily denied. (*Id.* at 124.) The bailiff found other newspapers in the jury room; all of the newspapers were admitted together as one trial exhibit. (*Id.*; ROA, Ex. S.)

The Court has reviewed all of the newspapers admitted as an exhibit, which are in storage at the Pima County Superior Court. (*See* ROA, Ex. S.) Three of the newspapers include articles about the trial. (*Id.*) Two of those articles summarized trial testimony and were captioned, "Jurors listen to tape recording of Schackart's murder confession" and "Schackart 'could not form intent' to kill friend, psychiatrist testifies."[3] (*Id.*, Ariz. Daily Star dated 3/15/85 at 4, 3/16/85 at 4.) Juror Cutcher possessed a partial newspaper section with an article on the first page titled, "Admission is rejected as murder trial starts," and the

---

[2] "RT" refers to reporter's transcript. "ROA" refers to the ten-volume record on appeal from trial and sentencing prepared for Petitioner's second direct appeal to the Arizona Supreme Court (Case No. CR-93-0535-AP). "ROA-PCR" refers to the seven-volume record on appeal from post-conviction proceedings prepared for Petitioner's petition for review to the Arizona Supreme Court (Case No. CR-02-0344-PC). "PR Doc." refers to the Arizona Supreme Court's docket for Petitioner's petition for review of that case to the Arizona Supreme Court. The original reporter's transcripts and certified copies of the trial and post-conviction records were provided to this Court by the Arizona Supreme Court on November 18, 2004. (Dkts. 66, 67.)

[3] Contrary to suggestions by both counsel, only the paper taken from juror Cutcher contains an article about Petitioner's attempted guilty plea.

- 2 -

1  continuation of the article on page three was captioned, "Schackart tries to plead guilty to
2  friend's slaying." (*Id.*, Ariz. Daily Star dated 3/14/85 at 1, 3.) The article reports that, just
3  before trial, Petitioner attempted to plead guilty to first-degree murder, rape, and kidnapping
4  against the advice of his attorneys, one of whom was quoted as saying he could not state
5  there was a factual basis for a guilty plea. (*Id.*) The plea was rejected, the article states,
6  because the information Petitioner provided to the court did not satisfy the factual basis
7  needed for each element of the charges. (*Id.*) The article goes on to summarize the opening
8  statements of the trial. (*Id.* at 3.)

9        The jury found Petitioner guilty of kidnapping, sexual assault and first degree felony
10 murder. (RT 3/16/85 at 129-30.) In conjunction with a motion for new trial based on juror
11 misconduct, counsel contacted twelve of the fourteen jurors, some of whom declined to
12 discuss the case; counsel represented to the court that no material evidence in support of
13 Petitioner's claim had been uncovered. (RT 4/3/85 at 13-14.) Counsel was told to complete
14 their investigation of the remaining two jurors and file a report with the court (*id.* at 18-19);
15 there is no evidence in the record indicating whether the investigation was finished.
16 Approximately two weeks later, the motion for new trial was argued and denied. (RT
17 4/15/85 at 50-52.) A state law jury misconduct claim was raised on appeal and the Arizona
18 Supreme Court stated the record as follows: "The trial judge personally questioned the juror
19 who had the newspaper and discerned that she had not read the article. There was also no
20 evidence that other jurors had violated the court's admonition by reading about defendant or
21 the case." *State v. Schackart*, 175 Ariz. 494, 503, 858 P.2d 639, 648 (1993).

22       In his state post-conviction relief (PCR) petition, Petitioner requested an evidentiary
23 hearing on his federal claim of juror misconduct and related IAC (ROA-PCR 166 at 14); the
24 claims were denied without a hearing. (ROA-PCR 185 at 22.) In the PCR ruling, the court
25 noted that the juror stated she had not read anything about the case. (*Id.* at 7.) The court
26 further stated that counsel's investigation after trial did not uncover any evidence to support
27 the motion for new trial. (*Id.*) The court distinguished the case from a situation in which a
28

- 3 -

1 juror read extraneous material and the trial judge failed to inquire into the possibility of
2 prejudice of other jurors. (*Id.*) The PCR court found that the due process claim failed to
3 present a material issue of fact or law and that trial counsel's performance was not below
4 prevailing standards. (*Id.* at 7-8.) The Arizona Supreme Court summarily denied
5 Petitioner's petition for review from the denial of PCR relief. (PR Doc. 26.)

6 Petitioner filed a habeas petition in this Court and requested discovery and an
7 evidentiary hearing on Claims 5 and 6(a), among others. The Court granted informal
8 discovery regarding these claims, allowing Petitioner to locate and interview all jurors and
9 trial counsel. During his investigation, Petitioner located all fourteen jurors; four are
10 deceased and one is not competent to be interviewed. (Dkt. 90, Barkman Decl.) Of the nine
11 remaining jurors, six informed the investigator they had no recollection of any newspapers
12 being in the possession of juror Cutcher or in the jury room. (*Id.*, ¶ 3.) Juror Patrick
13 Robinson remembered that juror Cutcher was discovered to have a newspaper in her bag, and
14 juror Gregory Constantino remembered "something about a newspaper," and that the bailiff
15 took something from the jury room. (*Id.*, ¶ 4.) The investigator attempted but was unable
16 to make personal contact with juror Melinda Kemberling to conduct an interview. (*Id.*, ¶ 5.)

17 After completing the investigation, Petitioner filed the instant motion renewing his
18 request for formal discovery and an evidentiary hearing as to these claims. The Court
19 granted formal discovery as to juror Kemberling and denied the remainder of the request.
20 (*See* Dkt. 91.) Petitioner deposed juror Kemberling and filed a report with the Court stating
21 that she had no information relevant to this case.[4] (Dkt. 95 at 1.) In the report, Petitioner
22 renewed his request for formal discovery as to all jurors. (*Id.* at 2.)

---

[4] The Court notes that Petitioner was ordered to file his report to the Court within ten days of the deposition. (Dkt. 91 at 3.) The juror's deposition was taken on September 27, 2006; Petitioner did not file his report until October 23, 2006, and provided no explanation for the delay. However, Respondents indicated no objection to the late filing. (*See* Dkt. 98 at 2 n.1.)

- 4 -

## **LEGAL STANDARD FOR EVIDENTIARY HEARING**

Historically, the district court had considerable discretion to hold an evidentiary hearing to resolve disputed issues of material fact. *See Townsend v. Sain*, 372 U.S. 293, 312, 318 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *and limited by* § 2254(e)(2); *Baja v. Ducharme*, 187 F.3d 1075, 1077-78 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required). That discretion is significantly circumscribed by § 2254(e)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Baja*, 187 F.3d at 1077-78.

Section 2254 provides that:

*If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*

(A) the claim relies on –

    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added). The Supreme Court has interpreted subsection (e)(2) as precluding an evidentiary hearing in federal court if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). A hearing is not barred, however, when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." *Id.*; *see Baja*, 187 F.3d at 1078-79 (allowing hearing when state court denied opportunity to develop factual basis of claim).

- 5 -

If the petitioner has not failed to develop the factual basis of a claim in state court, the Court will then proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in *Townsend*. 372 U.S. 293; *see Baja*, 187 F.3d at 1078; *Horton v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005). Pursuant to *Townsend*, a federal district court *must* hold an evidentiary hearing in a § 2254 case when: (1) the facts are in dispute; (2) the petitioner "alleges facts which, if proved, would entitle him to relief;" and (3) the state court has not "reliably found the relevant facts" after a "full and fair evidentiary hearing," at trial or in a collateral proceeding. *Townsend*, 372 U.S. at 312-13; *cf. Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (upholding the denial of a hearing when petitioner's allegations were insufficient to satisfy the governing legal standard); *Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984) (hearing not required when claim must be resolved on state court record or claim is based on non-specific conclusory allegations). In any other case in which diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." *Townsend*, 372 U.S. at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and ordinarily should, accept the facts as found in the hearing.").

## **AEDPA STANDARD FOR RELIEF**

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). The

1  relevant state court decision is the last reasoned state decision regarding a claim. *Barker v.
2  Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-
3  04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

4  "The threshold question under AEDPA is whether [petitioner] seeks to apply a rule
5  of law that was clearly established at the time his state-court conviction became final."
6  *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection
7  (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs
8  the sufficiency of the claims on habeas review. "Clearly established" federal law consists
9  of the holdings of the Supreme Court at the time the petitioner's state court conviction
10 became final. *Williams*, 529 U.S. at 365; *see Musladin v. Lamarque*, 427 F.3d 653, 655 (9th
11 Cir. 2005) ("AEDPA limits the source of clearly-established federal law to Supreme Court
12 cases"); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be
13 granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional
14 principle advanced by a petitioner, even if lower federal courts have decided the issue.
15 *Williams*, 529 U.S. at 381. Nevertheless, while only Supreme Court authority is binding,
16 circuit court precedent may be of "persuasive value" in determining what law is clearly
17 established and whether a state court applied that law unreasonably. *Musladin*, 427 F.3d at
18 655 (collecting cases); *see Clark*, 331 F.3d at 1069.

19 The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).
20 The Court has explained that a state court decision is "contrary to" the Supreme Court's
21 clearly established precedents if the decision applies a rule that contradicts the governing law
22 set forth in those precedents, thereby reaching a conclusion opposite to that reached by the
23 Supreme Court on a matter of law, or if it confronts a set of facts that is materially
24 indistinguishable from a decision of the Supreme Court but reaches a different result.
25 *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In
26 characterizing the claims subject to analysis under the "contrary to" prong, the Court has
27 observed that "a run-of-the-mill state-court decision applying the correct legal rule to the
28

- 7 -

facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert*, 393 F.3d at 974.

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. In order for a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (*Miller-El I*). In considering a challenge under 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El II*, 545 U.S. at 240.

As the Ninth Circuit has noted, application of the foregoing standards presents difficulties when the state court decided the merits of a claim without providing its rationale. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000) (*Delgado II*). In those circumstances, a federal court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law. *Himes*,

- 8 -

1    336 F.3d at 853; *Pirtle*, 313 F.3d at 1167.  Although the record is reviewed independently,
2    a federal court nevertheless defers to the state court's ultimate decision.  *Pirtle*, 313 F.3d at
3    1167 (citing *Delgado II*, 223 F.3d at 981-82); *see also, Himes*, 336 F.3d at 853.  Only when
4    a state court did not decide the merits of a properly raised claim will the claim be reviewed
5    de novo, because in that circumstance "there is no state court decision on [the] issue to which
6    to accord deference."  *Pirtle*, 313 F.3d at 1167; *see also Menendez v. Terhune*, 422 F.3d
7    1012, 1025-26 (9th Cir. 2005); *Nulph v. Cook*, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

## **ANALYSIS**

9    In assessing whether to grant an evidentiary hearing on Claims 5 and 6(a), the Court
10   finds it most expedient to initially focus on whether Petitioner alleges facts which if true
11   would entitle him to relief.  *See Townsend*, 372 U.S. at 312-13.

### **CLAIM 5**

13   In Claim 5, Petitioner alleges that his rights to a fair and impartial jury were violated
14   because his guilt was determined by jurors in possession of a newspaper report of Petitioner's
15   attempt to plead guilty before trial.  This claim appears to have multiple, not clearly
16   articulated, components – that the absence of an evidentiary hearing in the trial court violated
17   due process and that at least one member of the jury was actually or impliedly biased.

18   Petitioner does not clearly distinguish whether Claim 5 is raised under § 2254 (d)(1),
19   (d)(2), or both; however, because he challenges both the state court fact finding and its legal
20   analysis the Court assesses both statutory prongs.

21   <u>Section 2254(d)(2) Analysis</u>

22   To satisfy section (d)(2), Petitioner must demonstrate that the state court decision was
23   based on an unreasonable factual determination in light of the evidence presented in state
24   court.  28 U.S.C. § 2254(d)(2).  The state courts, both the Arizona Supreme Court and the
25   PCR court, *see Kesser v. Cambra*, 392 F.3d 327, 341 (9th Cir. 2004) (presumption of
26   correctness attaches to trial and appellate court findings), explicitly found two facts: (1) juror
27   Cutcher did not read about Petitioner's attempt to plead guilty; and (2) there was no evidence

1  that other jurors had exposure to that information. *See Burks v. Borg*, 27 F.3d 1424, 1432
2  (9th Cir. 1994) (finding the extent of juror exposure to extrinsic evidence to be an issue of
3  fact to which the presumption of correctness attaches). Without expressly setting forth a
4  (d)(2) argument, Petitioner contends no findings were made and that the "findings" set forth
5  above are not entitled to deference because (a) the state court's inquiry was brief and
6  included only one juror, (b) juror Cutcher's denial of exposure to the article was not credible,
7  and (c) none of the jurors were questioned under oath at an evidentiary hearing. (Dkt. 52 at
8  38-39.)

9        The Court first examines the state court evidence relevant to the first factual finding
10 at issue – that juror Cutcher did not read about Petitioner's attempt to plead guilty. When a
11 newspaper was discovered in her possession, the trial court immediately questioned her about
12 it on the record while she was under oath as a juror. *See* Ariz. R. Crim. P. 18.6(b) (requiring
13 jurors to swear to follow the court's instructions and decide the case in accord with the law
14 and evidence). The juror denied reading the paper; implicit in the Court's denial of any
15 corrective action was a determination that the court found her denial credible. *See Marshall*
16 *v. Longberger*, 459 U.S. 422, 433-34 (1983) (holding that federal court must defer to
17 credibility finding implicit in state court denial of relief and cannot redetermine credibility
18 findings by a state court that observed the witnesses demeanor). Although the inquiry was
19 brief, no further questions were warranted in light of the court's conclusion that juror Cutcher
20 was being truthful. Moreover, a post-trial investigator who contacted juror Cutcher and most
21 of the other jurors was unable to find any material information to support a motion for a new
22 trial. (RT 4/3/85 at 14.) Although the possession of a two-day-old paper containing an
23 article about Petitioner's attempt to plead guilty is suspect, without other evidence to the
24 contrary, the state court's determination that the juror had not read the paper, which was
25 based upon direct questioning of the juror, is not objectively unreasonable.

26       Next, the Court reviews the relevant evidence regarding the state courts' second
27 factual finding – that other jurors were not exposed to the information that Petitioner

- 10 -

1 attempted to plead guilty. Of the newspapers retained as exhibits, only juror Cutcher's
2 contained the story about Petitioner's attempt to plead guilty, and that paper was in her bag
3 and not loose in the jury room. During the post-trial investigation no juror provided
4 information suggesting that jurors were exposed to media coverage. (RT 4/3/85 at 13-14;
5 RT 4/15/85 at 50-52.) Further, the trial court repeatedly advised the jury not to read any
6 media coverage regarding the trial (RT 3/12/85 at 75; RT 3/13/85 at 40-41; RT 3/13/85 Supp.
7 at 32-33; RT 3/14/85 at 103, 177; RT 3/15/85 at 140). *See Richardson v. Marsh*, 481 U.S.
8 200, 206 (1987) (noting the "invariable assumption of the law that jurors follow their
9 instructions); *Gibson v. Ortiz*, 387 F.3d 812, 822 (9th Cir. 2004) (presuming a jury follows
10 its instructions). Contrary to Petitioner's argument, state court fact findings can survive a
11 (d)(2) analysis even in the absence of an evidentiary hearing. *See Perez v. Rosario*, 459 F.3d
12 943, 950-51 (9th Cir. 2006) (holding that fact findings are not per se unreasonable when a
13 state court did not hold an evidentiary hearing if the record conclusively establishes a fact
14 or the allegations are incredible in light of the record). Because no contradictory evidence
15 was presented after an investigation, it was not objectively unreasonable for the state courts
16 to determine that no jurors were exposed to the information that Petitioner attempted to plead
17 guilty.

18 The Court finds that the state court fact findings are not objectively unreasonable;
19 therefore, Petitioner is not entitled to relief pursuant to section (d)(2).

20 Section 2254(d)(1) Analysis

21 Petitioner alleges that the PCR court's decision was an unreasonable application of
22 Supreme Court law entitling him to relief pursuant to (d)(1). Because the PCR court did not
23 provide its rationale, this Court independently reviews the record and determines whether the
24 ultimate decision to deny the claim was an unreasonable application of Supreme Court law.
25 *See Pirtle*, 313 F.3d at 1167; *Himes*, 336 F.3d at 853.

26 A criminal defendant is entitled to "a fair trial by a panel of impartial, 'indifferent'
27 jurors," and the verdict must be based on evidence developed at trial. *Irvin v. Dowd*, 366

28
- 11 -

1  U.S. 717, 722 (1961) (quoting *In re Oliver*, 333 U.S. 257 (1948)).  The right to trial by jury
2  requires that the evidence against a defendant come from the witness stand attended by the
3  protections of confrontation, cross-examination and counsel.  *Turner v. Louisiana*, 379 U.S.
4  466, 472-73 (1965).  "Due process means a jury capable and willing to decide the case solely
5  on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences
6  and to determine the effect of such occurrences when they happen."  *Smith v. Phillips*, 455
7  U.S. 209, 216, 218 (1982).  A challenger to a juror bears the burden and "[u]nless he shows
8  the actual existence of such an opinion in the mind of the juror as will raise the presumption
9  of partiality, the juror need not necessarily be set aside."  *Irvin*, 366 U.S. at 723.

10  Petitioner first asserts that a state court hearing is mandatory when there are
11  allegations of juror bias.  He relies on *Remmer v. United States* and *Smith v. Phillips*.
12  Although *Remmer* suggested a hearing is mandatory, it is distinguishable from the facts of
13  this case because *Remmer* was a direct appeal reviewed for an abuse of discretion not a
14  constitutional violation alleged in a habeas proceeding.  *Remmer v. United States*, 347 U.S.
15  227, 229 (1954).  In addition, it addressed not an issue of media exposure but one of juror
16  tampering, which is presumptively prejudicial and places the burden on the government.  *Id.*;
17  *see also United States v. Dutkel*, 192 F.3d 893, 894-95 & n.1 (9th Cir. 1999) (limiting the
18  hearing requirement of *Remmer* to jury tampering cases).

19  *Phillips* is similarly unpersuasive.  The Court in *Phillips* referred to a hearing as the
20  remedy for an allegation of juror bias and held that a post-trial hearing satisfied due process
21  under the circumstances of that case; however, the general rule set forth in that case is that
22  a defendant must have an "opportunity to prove actual bias."  455 U.S. at 215; *see Tracey v.*
23  *Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (finding that *Phillips* "leaves open the door
24  as to whether a hearing is always required" and that something less may satisfy due process).
25  No Supreme Court case has held that a trial court's failure to investigate possible juror bias
26  is a structural error requiring a new trial even in the absence of prejudice.  *See Sims v.*
27  *Rowland*, 414 F.3d 1148, 1152-53 (9th Cir. 2005).  Further, the Ninth Circuit has explicitly
28

- 12 -

1. held that there is no "clearly established" Supreme Court law requiring a trial court to conduct a sua sponte hearing any time there is an allegation of juror bias. *See id.* at 1155 (citing *Tracey*, 341 F.3d at 1044). Accordingly, the Court disagrees with Petitioner's assertion to the contrary. *See Musladin*, 427 F.3d at 655 (finding circuit court law persuasive when determining what law is clearly established).

Petitioner has had a sufficient opportunity to prove actual bias as required by Supreme Court law. Juror Cutcher was questioned at trial while under oath as a juror, *see* Ariz. R. Crim. P. 18.6(b). Shortly after trial, twelve of the fourteen jurors were questioned by trial counsel and no information was obtained to suggest that any jurors were exposed to prejudicial information. (RT 4/3/85 at 13-14.) Trial counsel was given permission to contact the remaining two jurors and complete the post-trial investigation. (*Id.* at 18-19.) Thus, contrary to *Remmer* and *Phillips*, neither the trial court nor the PCR court were presented with a threshold showing of possible bias warranting a *sua sponte* evidentiary hearing at which every juror would be questioned under oath; furthermore, neither counsel nor Petitioner requested such a hearing at the trial-stage of the case. The state court's obligation, pursuant to *Phillips*, is to be watchful for prejudicial occurrences and to ensure that a jury is making its decision based on the information presented at trial. 455 U.S. at 217. Not conducting an evidentiary hearing in state court under the circumstances present in this case was not an unreasonable application of clearly established Supreme Court law.

Next, the Court assesses whether Petitioner's allegations of bias, if true, would entitle him to relief. In conducting this evaluation, the Court must presume the two state court findings addressed above are correct; Petitioner can only overcome them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, the Court presumes that no juror was exposed to extrinsic evidence about Petitioner's attempt to plead guilty. If Petitioner does not allege clear and convincing evidence to overcome that fact, he will not have alleged sufficient facts to demonstrate actual or implied bias. *See Burks*, 27 F.3d at 1432 n.6 (no constitutional error if no prejudicial information introduced to jury).

- 13 -

Despite a state and federal court investigation, Petitioner does not allege that he can prove anything more than the undisputed fact that juror Cutcher possessed a newspaper with an article and headline about Petitioner's attempt to plead guilty. Although that fact does raise an initial specter of concern, with nothing more it falls short of demonstrating that any juror held a partial opinion. Petitioner does not allege clear and convincing evidence that juror Cutcher or any other juror deliberated his guilt with the knowledge that he had attempted to plead guilty. Because Petitioner's allegations if true would not establish that any juror was exposed to extrinsic information, he is not entitled to relief or an evidentiary hearing on his claim that a biased juror sat on his jury. *Id.*

In an abundance of caution, and because it is relevant to Claim 6(a), the Court further assesses Petitioner's allegation of actual or implied bias as if the state court made no factual findings entitled to deference. Thus, taking Petitioner's allegations as true, juror Cutcher possessed a newspaper with a large headline regarding Petitioner's attempt to plead guilty and was exposed to the information in the headline and article. First, in order to establish actual bias, Petitioner must show not only exposure to extrinsic evidence but also that it created partiality in one or more jurors such that his conviction was not based solely on the evidence presented at trial. *Irvin*, 366 U.S. at 723; *Phillips*, 455 U.S. at 216. Petitioner does not allege that any juror was not actually capable of deciding his case based on the trial evidence due to exposure to extrinsic evidence; similarly, he does not allege that any juror would testify at an evidentiary hearing that knowledge of Petitioner's attempt to plead guilty impacted deliberations of his guilt. Taking Petitioner's allegations as true, they do not establish actual bias entitling Petitioner to relief. Additionally, Petitioner's speculation that perhaps under oath a juror might remember more or could provide helpful information is not sufficient to obtain an evidentiary hearing in this Court. *See Coleman v. McCormick*, 874 F.2d 1280, 1284-85 (9th Cir. 1989).

In its most recent opinion on the subject, the Supreme Court indicated that courts should not impute juror bias; rather, the defendant should be given an opportunity to prove

- 14 -

1  actual bias. *See Phillips*, 455 U.S. at 218. While a concurring opinion in *Phillips* suggests
2  that implied bias is not wholly foreclosed, the need for it is limited to extreme circumstances
3  generally involving a juror's personal interest in the case through employment, family
4  relationship or involvement in the criminal action. *Id.* at 221-22 (O'Connor, J., concurring).
5  None of those are present in this case, and it is without question that no clearly established
6  Supreme Court law requires imputation of bias.

7  Even if implied bias were a viable cause of action, the newspaper article in question
8  does not raise the strong presumption of prejudice suggested by Petitioner. First, although
9  the headline on the second page of the article stated that Petitioner attempted to plead guilty
10 to killing the victim, it does not indicate that he was pleading straight to the indictment or to
11 first degree murder. This is critical because Petitioner's confession to the killing was
12 admitted at trial and his defense was that he did not intend the killing and should instead be
13 found guilty of second degree murder. (RT 3/13/85 at 105-06; RT 3/16/85 at 70.) Thus, the
14 headline says no more than Petitioner's counsel had already conceded to the jury – that
15 Petitioner admitted killing the victim. Second, the lead headline highlighted the fact that the
16 admission was rejected by the Court. While the article noted that the attempted plea was to
17 first degree murder, it explained that the plea was rejected because Petitioner would not agree
18 to a factual basis for it and that counsel did not believe there was a factual basis. (ROA, Ex.
19 S, Ariz. Daily Star dated 3/14/85 at 1, 3.) Thus, the article itself does not give rise to
20 significant prejudice because it supports Petitioner's defense that the prosecution might not
21 be able to satisfy all of the elements necessary for first degree murder. Finally, Petitioner
22 was found guilty of felony murder, predicated upon the jury's findings of guilt as to
23 kidnapping and/or sexual assault (RT 3/16/85 at 129-30), which does not require a mental
24 state independent of that required for the underlying felony(ies). The felony murder verdict
25 undermines Petitioner's contention that because his mental state was the central issue as to
26 first degree murder the headline regarding the attempted guilty plea was highly prejudicial.
27 To the extent implied bias could be sufficient to establish a due process violation, if it was

1  established that at least one juror was exposed to the headline and article about Petitioner's
2  attempt to plead guilty, the Court finds that the circumstances would not satisfy the standard.
3       In sum, the Court finds that taking Petitioner's allegations as true and adopting his
4  contention that the state court made no findings of fact entitled to deference, he is not entitled
5  to relief on Claim 5. Therefore, Petitioner's request for an evidentiary hearing is denied, and
6  Claim 5 is dismissed with prejudice.

**CLAIM 6(a)**

In Claim 6(a), Petitioner alleges IAC at trial based on counsel's alleged failure to develop a proper factual record regarding juror exposure to the newspaper article about Petitioner's unsuccessful attempt to plead guilty. There is no question that the relevant clearly established Supreme Court authority is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of IAC, Petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 668. To show deficient performance, a petitioner must produce evidence that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice under *Strickland*, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Under the prejudice prong, "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

For the reasons set forth below, the Court has determined that it is unnecessary to assess the quality of counsel's performance under the first prong of *Strickland* because Petitioner has failed to meet his burden under the second prong, which requires that he "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. As the *Strickland* Court explained, "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."

1 *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of
2 sufficient prejudice . . . that course should be followed"). Where, as here, the state court
3 adjudicated the merits of Petitioner's IAC claim without addressing prejudice, the Court
4 conducts an independent review of the state record to assess whether it is objectively
5 unreasonable not to find prejudice. *See Pirtle*, 313 F.3d at 1167-68 n.4 (explaining that in
6 *Delgado II*, independent-review-of-record standard applied to each prong of IAC claim
7 dismissed on merits); *Avila v. Galaza*, 297 F.3d 911, 921 (9th Cir. 2002).

8 In the amended petition, Petitioner alleges that counsel failed to develop a factual
9 record with sworn testimony regarding juror exposure to the article stating that Petitioner
10 attempted to plead guilty. He does not specify the prejudice arising from counsel's alleged
11 failure; however, in light of the allegations in Claim 5, it appears the prejudice Petitioner
12 intends is that a biased juror determined his guilt. Thus, Petitioner must affirmatively prove
13 that if counsel had conducted further investigation and developed a better factual record, it
14 would have prevented a biased juror from deliberating the verdict in his case (either by
15 having the juror(s) removed before deliberations or by obtaining a new trial). As discussed
16 at length above, Petitioner has not substantiated that a biased juror in fact decided the verdict
17 in his case. In light of that analysis, there is not a reasonable probability that further factual
18 development would have resulted in a different outcome, and Petitioner cannot demonstrate
19 prejudice. Therefore, it was not objectively unreasonable for the state court to deny this
20 claim. Claim 6(a) is dismissed with prejudice, and Petitioner's request for an evidentiary
21 hearing is denied.

22 **RENEWED MOTION FOR DISCOVERY**

23 Petitioner has renewed his motion requesting formal discovery from all jurors. In a
24 prior order, the Court found no good cause for additional discovery because none of the
25 contacted jurors had provided information to support Petitioner's allegations that jurors knew
26 about, or were biased by, Petitioner's attempt to plead guilty. (*See* Dkt. 91 at 2.) The
27 subsequent deposition of juror Kemberling does not provide any new support for Petitioner's

28

- 17 -

1 request. Additionally, to determine whether a petitioner has established "good cause" for
2 discovery under Rule 6(a), a habeas court must identify the essential elements of the
3 petitioner's substantive claim and evaluate whether "specific allegations before the court
4 show reason to believe that the petitioner may, if the facts are fully developed, be able to
5 demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)
6 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). As discussed above, the Court has
7 concluded that Petitioner's allegations do not demonstrate that he is entitled to relief.
8 Therefore, no further discovery is warranted and the request is denied.

## **CERTIFICATE OF APPEALABILITY**

10 Although this is not a final order in these proceedings, the Court has endeavored to
11 determine, if judgment is ultimately entered against Petitioner, whether a certificate of
12 appealability (COA) should be granted on the issues addressed herein. Pursuant to 28 U.S.C.
13 § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of
14 the denial of a constitutional right." This showing can be established by demonstrating that
15 "reasonable jurists could debate whether (or, for that matter, agree that) the petition should
16 have been resolved in a different manner" or that the issues were "adequate to deserve
17 encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing
18 *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

19 The Court finds that reasonable jurists could debate its resolution of Claims 5 and
20 6(a). Therefore, if Petitioner ultimately does not prevail on his petition, the Court intends to
21 issue a COA in accord with the above finding at the time of judgment.

23 Accordingly,

24 **IT IS HEREBY ORDERED** that Claims 5 and 6(a) are **DISMISSED WITH**
25 **PREJUDICE**.

26 **IT IS FURTHER ORDERED** that Petitioner's Renewed Motion for Evidentiary
27 Hearing (Dkt. 86) is **DENIED**.

1    **IT IS FURTHER ORDERED** that Petitioner's Renewed Motion for Discovery (Dkt.
2    95 ) is **DENIED**.

3    **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or
4    Respondents file a Motion for Reconsideration of this Order, such motion shall be filed
5    within fifteen (15) days of the filing of this Order.

6    **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order
7    to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

8    DATED this 29th day of November, 2006.

David C. Bury
United States District Judge