1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

Ronald Dwight Schackart,              )
9                                                   )        No. CV 03-287-TUC-DCB
            Petitioner,                       )
10                                                 )        DEATH PENALTY CASE
   vs.                                           )
11                                                 )        **MEMORANDUM OF DECISION**
                                                  )        **AND ORDER**
12  Charles L. Ryan,[1] et al.,           )
                                                  )
13           Respondents.                 )
   _____ )

14

15          Petitioner, Ronald Dwight Schackart, filed a Petition for Writ of Habeas Corpus

16  alleging that he is imprisoned and sentenced to death in violation of the United States

17  Constitution.  In this Order, the Court reviews the merits of the eight remaining claims.  For

18  the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief.

            **FACTUAL AND PROCEDURAL BACKGROUND**
19
20          On March 16, 1985, Petitioner was convicted of sexual assault, kidnapping and first

21  degree murder.  According to Petitioner's confession:[2]

22          defendant and the victim had been friends.  They intended to meet for lunch
            on March 8[, 1984], to discuss his recent problems.  Upon discharge from the
23          army, defendant had allegedly returned home to find his wife in bed with a

24  _____

25          [1]  Charles L. Ryan, as the current Interim Director of the Arizona Department of
   Corrections, is automatically substituted as Respondent pursuant to Federal Rule of Civil
26  Procedure 25(d).

27          [2]  This factual summary is based on the Court's review of the record and the Arizona
   Supreme Court's opinion upholding Petitioner's convictions.  *State v. Schackart*, 175 Ariz.
28  494, 496-97, 858 P.2d 639, 641-42 (1993).

man. He also had been charged with sexually assaulting his wife, an accusation he denied. Defendant was out of work. He had no place to stay, having just moved from his parents' house following an argument. In an effort to help him, the victim drove defendant to the Holiday Inn so he could rent a room.

They talked for awhile in the room. Defendant claimed he became upset thinking about his wife and began confusing the victim with her. He pulled a gun out and asked if she would have sex with him. She refused, so he forced her to comply at gunpoint.

The two remained in the room for several hours. When the victim appeared to be sleeping, defendant struck her on the neck with the gun butt, allegedly to knock her out. The blow, however, did not render her unconscious. Instead, she awoke and began screaming. Defendant then strangled her.

Petitioner drove to the home of his pastor, who accompanied him to his mother's house. After he told his mother what had happened, he turned himself in to the police. The victim was found at the Holiday Inn dead from strangulation and with a sock stuffed in her mouth.

Pima County Superior Court Judge Michael J. Brown sentenced Petitioner to death for the murder and to a term of years for the other counts. The Arizona Supreme Court affirmed the convictions for all three crimes and the sentences for sexual assault and kidnapping. *State v. Schackart*, 175 Ariz. 494, 858 P.2d 639 (1993) ("*Schackart I*"). The court vacated the death sentence and remanded for a new sentencing hearing because the transcript was inadequate for review. *Id.* at 499, 858 P.2d at 644. On December 7, 1993, Petitioner was again sentenced to death for the first degree murder conviction. That sentence was affirmed by the Arizona Supreme Court. *State v. Schackart*, 190 Ariz. 238, 947 P.2d 315 (1997) ("*Schackart II*"). Petitioner filed a petition for post-conviction relief (PCR) with the trial court and a subsequent addendum to the PCR petition. (ROA 166, 167.)[3] The PCR

---

[3]   "ROA" refers to the seven-volume record on appeal from post-conviction proceedings prepared for Petitioner's petition for review to the Arizona Supreme Court (Case No. CR-02-0344-PC). "PR Doc." refers to the Arizona Supreme Court's docket for Petitioner's petition for review in that case. "RT" refers to reporter's transcript. The original reporter's transcripts and certified copies of the trial and post-conviction records were provided to this Court by the Arizona Supreme Court on November 18, 2004. (Dkts. 66, 67.)

1   petition was denied without a hearing.  (*Id.* at 185.)  The Arizona Supreme Court summarily

2   denied Petitioner's petition for review on May 28, 2003.  (PR Doc. 26.)

3                    **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

4            Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) a writ of

5   habeas corpus cannot be granted unless it appears that the petitioner has exhausted all

6   available state court remedies.  28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501

7   U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509 (1982).  To exhaust state remedies, a

8   petitioner must "fairly present" the operative facts and the federal legal theory of his claims

9   to the state's highest court in a procedurally appropriate manner.  *O'Sullivan v. Boerckel*, 526

10  U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S.

11  270, 277-78 (1971).  If a habeas claim includes new factual allegations not presented to the

12  state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal

13  claim presented and considered in state court.  *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

14           In Arizona, there are two primary procedurally appropriate avenues for petitioners to

15  exhaust federal constitutional claims:  direct appeal and post-conviction relief proceedings.

16  Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides

17  that a petitioner is precluded from relief on any claim that could have been raised on appeal

18  or in a prior PCR petition.  Ariz. R. Crim. P. 32.2(a)(3).  The preclusive effect of Rule

19  32.2(a) may be avoided only if a claim falls within certain exceptions (subsections (d)

20  through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a

21  prior petition or not presented in a timely manner.  *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b),

22  32.4(a).

23           A habeas petitioner's claims may be precluded from federal review in two ways.

24  First, a claim may be procedurally defaulted in federal court if it was actually raised in state

25  court but found by that court to be defaulted on state procedural grounds.  *Coleman*, 501 U.S.

26  at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed to present

27  it in state court and "the court to which the petitioner would be required to present his claims

28                                               - 3 -

1   in order to meet the exhaustion requirement would now find the claims procedurally barred."

2   *Id.* at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the

3   district court must consider whether the claim could be pursued by any presently available

4   state remedy).  If no remedies are currently available pursuant to Rule 32, the claim is

5   "technically" exhausted but procedurally defaulted.  *Coleman*, 501 U.S. at 732, 735 n.1; *see*

6   *also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

7        Because the doctrine of procedural default is based on comity, not jurisdiction, federal

8   courts retain the power to consider the merits of procedurally defaulted claims.  *Reed v. Ross*,

9   468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of a

10  procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure

11  to properly exhaust the claim in state court and prejudice from the alleged constitutional

12  violation, or shows that a fundamental miscarriage of justice would result if the claim were

13  not heard on the merits in federal court.  *Coleman*, 501 U.S. at 750.

14       Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some

15  objective factor external to the defense impeded counsel's efforts to comply with the State's

16  procedural rule."  *Id*. at 753.  Objective factors which constitute cause include interference

17  by officials which makes compliance with the state's procedural rule impracticable, a

18  showing that the factual or legal basis for a claim was not reasonably available, and

19  constitutionally ineffective assistance of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488

20  (1986).

21                    **LEGAL STANDARD FOR RELIEF UNDER THE AEDPA**

22       The AEDPA established a "substantially higher threshold for habeas relief" with the

23  "acknowledged purpose of 'reducing delays in the execution of state and federal criminal

24  sentences.'"  *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939-40 (2007) (quoting *Woodford v.*

25  *Garceau*, 538 U.S. 202, 206 (2003)).  The AEDPA's "'highly deferential standard for

26  evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of

27  the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v.*

28                                              - 4 -

*Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 77; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's

clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.  For a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 127 S. Ct. at 1939; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*).  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).  In considering a challenge under § 2254(d)(2), state court factual determinations are presumed

1  to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and

2  convincing evidence."  28 U.S.C. § 2254(e)(1); *Landrigan*, 127 S. Ct. at 1939-40; *Miller-El*

3  *II*, 545 U.S. at 240.

4  **DISCUSSION**

5  **Claim 1**

6  Petitioner alleges that his constitutional rights were violated by the court's inadequate

7  voir dire of jurors regarding the death penalty.  Specifically, Petitioner contends that the court

8  failed to follow the principles of *Witherspoon* and improperly excused two jurors based on

9  their opposition to the death penalty.

10  This claim was raised in Petitioner's PCR petition (ROA 166 at 4-5) and found

11  precluded pursuant to Rule 32.2(a)(3) due to Petitioner's failure to raise the claim on appeal

12  (ROA 185 at 7).  The Arizona Supreme Court summarily denied the Petition for Review.

13  (PR Doc. 26.)  Therefore, this claim is procedurally defaulted.[4]

14  Petitioner alleges ineffectiveness of appellate counsel as cause to excuse the default.[5]

15  To establish ineffective assistance of counsel (IAC) on appeal, Petitioner must show that his

16  counsel's performance was deficient and that the deficient performance caused him

17  prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Evitts v. Lucey*, 469 U.S.

18  387, 396 (1985) (recognizing the right to effective assistance of counsel for a first appeal as

19  of right).  To establish prejudice, a petitioner must show that there is a "reasonable

20  probability" that, absent counsel's errors, the result of the appeal would have been different.

21

22  [4] Petitioner's argument, that the state court's procedural bar language is ambiguous,

23  is unfounded.  The PCR court clearly stated the claim had been waived on appeal and relied
   upon Rule 32.2(a)(3) in finding it barred.  (ROA 185 at 7.)  A procedural bar in Arizona state

24  court based on Rule 32.2(a)(3) is an independent, *see Stewart v. Smith*, 536 U.S. 856, 860

25  (2002), and adequate bar to federal review of a claim, *see Ortiz*, 149 F.3d at 932; *Poland v.
   Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997).

26

27  [5] The claim of ineffectiveness of appellate counsel was raised and denied on the
   merits during Petitioner's PCR proceeding.  (ROA 185 at 5-7.)

28  - 7 -

*Strickland*, 466 U.S. at 694.  Thus, the Court will assess the merits of Claim 1 to determine whether, if it had been raised on appeal, there is a reasonable probability it would have been successful.

The following exchange regarding the death penalty took place during voir dire:

THE COURT:  First degree murder, ladies and gentlemen, is a Class 1 felony.  It's punishable by either death or by imprisonment.  The decision as to which of those sentences shall be imposed is made by the trial judge after a separate sentencing hearing.  It's not made by the jury.  Is there anything about that fact that would prevent you from being a fair and impartial juror in this case?

(No response)

THE COURT:  Do any of you – yes, Mr. Soto?

MR. SOTO:  I don't believe in capital punishment, okay?

THE COURT:  Is there anything – what I need to know is whether or not – you obviously have an opinion or belief about capital punishment. Aside from the fact that you don't believe in that, Mr. Soto, the question that I have for you is:  Is your opinion or belief so strong that it would either prevent you or substantially impair your ability to perform your sworn duty as a juror in this case to well and truly try the issues in the case according to the law and the evidence?

MR. SOTO:  Yeah, it would, really.

THE COURT:  Okay.  In other words, what you're telling me, Mr. Soto, is that because of your opinion you believe that you would be unable to sit as a judge in this case of the facts and try the guilt or innocence of the defendant?

MR. SOTO:  Yeah.

THE COURT:  I'm sorry.  You have to speak up because the gentleman is taking down the answers.  You believe – I just want to know if you believe that your opinion is so strong that you couldn't sit as a trial juror in the case?

MR. SOTO:  Yes.  Yeah, I –

THE COURT:  All right.  I'll excuse you, Mr. Soto, because of that answer.

(RT 3/12/85 at 34-35.)  The Court denied the defense request for additional questioning of Mr. Soto regarding whether he could decide guilt without considering the consequences. (*Id.* at 36.)  The court proceeded to question the other juror who had responded affirmatively to

1    the court's initial question:

2              THE COURT:  Mr. Westerfield?  All I want to know is whether you
         have an opinion.
3
              MR. WESTERFIELD:  Yes, I do.
4
              THE COURT:  Okay.  The question I have, Mr. Westerfield, is whether
5        that opinion, whatever it is, would affect your ability to sit as a fair and
         impartial juror in the case.  In other words, could you not sit and judge the
6        guilt or innocence of the defendant based on the evidence in this case?

7              MR. WESTERFIELD:  I'm afraid I could not.

8              THE COURT:  All right.  I appreciate your candor and I will, in fact,
         excuse you based on the fact that you have an opinion concerning capital
9        punishment that would either prevent or substantially impair your ability to sit
         as a trial juror in the case and follow your oath as a juror to justly decide the
10       evidence.

11             MR. WESTERFIELD:  Yes, it is.

12             THE COURT:  All right.  You are then excused. . . .

13   (*Id.* at 37.)  Defense counsel again objected to the dismissal.  (*Id.*)

14       After finding this claim procedurally barred, the PCR Court alternatively denied the

15   claim on the merits, concluding that the "prospective jurors in this case stated unequivocally

16   that their beliefs would prevent them from being able to act impartially."  (ROA 185 at 7.)

17       Clearly established Supreme Court law provides that, when selecting a jury in a

18   capital case, jurors cannot be struck for cause "because they voiced general objections to the

19   death penalty or expressed conscientious or religious scruples against its infliction."

20   *Witherspoon v. Illinois*, 391 U.S. 510, 522 & n.21 (1968) (noting that exclusion for cause is

21   appropriate if views on the death penalty would "prevent them from making an impartial

22   decision as to the defendant's guilt").  In other words, "[a] juror may not be challenged for

23   cause based on his views about capital punishment unless those views would prevent or

24   substantially impair the performance of his duties as a juror in accordance with his

25   instructions and his oath."  *Adams v. Texas*, 448 U.S. 38, 45 (1980); *see Wainwright v. Witt*,

26   469 U.S. 412, 424 (1985).

27       A trial judge's exclusion of a juror for cause based on bias is a finding of fact entitled

28                                              - 9 -

1   to deference under 28 U.S.C. § 2254(e)(1).  *See Witt*, 469 U.S. at 428-29 (applying an earlier

2   version of statutory deference to state court fact finding); *see also State v. Trostle*, 191 Ariz.

3   4, 12, 951 P.2d 866, 877 (1997) (deferring under Arizona law to trial court findings of bias

4   absent an abuse of discretion).  Petitioner bears the burden of rebutting the presumption with

5   clear and convincing evidence under 28 U.S.C. § 2254(e)(1).  He does not attempt to meet

6   this burden and did not seek evidentiary development with respect to this claim.  Therefore,

7   the Court must defer to the trial court's finding that the two jurors were biased due to their

8   views on the death penalty.  Further, the Court's review of the transcript reveals that the trial

9   court struck the two jurors because they attested that their views regarding capital

10  punishment would prevent or substantially impair their ability to sit as a juror in the guilt-

11  phase of Petitioner's case.  (RT 3/12/85 at 34-35, 37.)  Accordingly, the trial court's finding

12  of bias is not unreasonable in light of the state court record.[6]  *See* 28 U.S.C. § 2254(d)(2).

13  Because the jurors' views on the death penalty prevented them from impartially judging

14  Petitioner's guilt, they were properly excluded pursuant to *Witherspoon*.

15      Petitioner's primary argument is that the voir dire was too cursory and that simply

16  asking a juror the ultimate question – whether his views would prevent or substantially

17  impair the performance of his duties as a juror – was insufficient.  Petitioner cites Supreme

18  Court law noting that voir dire and findings of juror bias are more than "question-and-answer

19  sessions which obtain results in the manner of a catechism."  *Witt*, 469 U.S. at 424.  The

20  Supreme Court has not held that voir dire must be extensive and cannot be direct and focused

21  on the ultimate question; rather, the Court allows that less direct inquires can be sufficient

22  when examined in totality.  *See Darden v. Wainwright*, 477 U.S. 168, 175-77 (1986) (looking

23  to entirety of voir dire to determine if juror's performance would have been substantially

24

25      [6] The Court rejects Petitioner's argument that he can rebut the state court fact finding

26  because it was not supported by the record as a whole.  Further, that contention was based
    on a pre-AEDPA version of the federal habeas statute; the governing statute requires rebuttal

27  by clear and convincing evidence.

28                              - 10 -

1   impaired because court did not ask the ultimate question); *Witt*, 469 U.S. at 432-34 (looking

2   to entirety of juror's responses because precise language of standard not used).   In so

3   holding, the Court recognizes that there is no formula applicable to voir dire because "many

4   veniremen simply cannot be asked enough questions to reach the point where their bias has

5   been made 'unmistakably clear.'"   *Id.* at 424-25.   However, in Petitioner's case, the

6   questioning was direct and the jurors answered unambiguously that they could not be

7   impartial; that is all that is required.   The PCR court's denial of this claim was not an

8   unreasonable application of governing Supreme Court law.

9        Even if the two jurors had been inappropriately struck based on their views regarding

10   the death penalty, the Supreme Court has held:   "We simply cannot conclude, either on the

11   basis of the record before us or as a matter of judicial notice, that the exclusion of jurors

12   opposed to capital punishment results in an unrepresentative jury on the issue of guilt or

13   substantially increases the risk of conviction."   *Witherspoon*, 391 U.S. at 518, 523 n.21

14   (stating explicitly that its reversal of the death sentence did not affect the conviction).   In a

15   subsequent reversal of a death sentence, based on counsel not being allowed to ask jurors

16   whether they would automatically impose a sentence of death upon a finding of guilt, the

17   Court specifically noted that "[o]ur decision today has no bearing on the validity of

18   petitioner's conviction." *Morgan v. Illinois*, 504 U.S. 719, 728 (1992) (citing *Witherspoon*,

19   391 U.S. at 523 n.21); *see also Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) (death

20   qualification of Arizona jurors not inappropriate).

21        This claim fails on the merits.   Because the claim is not meritorious, there is not a

22   reasonable probability that it would have changed the outcome of the appeal if raised by

23   counsel.   *See Jones v. Smith,* 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (no prejudice from

24   appellate counsel's failure to raise issue on direct appeal when claim would not have

25   provided grounds for reversal); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (failing

26   to raise meritless argument not ineffective).   Therefore, Petitioner cannot establish cause and

27   prejudice to overcome the default of this claim.   Claim 1 is dismissed as procedurally

28

1   defaulted and, in the alternative, on the merits.

2       **Claims 9 and 10**

3       In Claim 9, Petitioner alleges that his Eighth and Fourteenth Amendment rights to due

4   process and a reliable capital case factual determination were violated because he was

5   sentenced by a biased judge.  In Claim 10, Petitioner alleges that his Eighth and Fourteenth

6   Amendment rights were violated by the sentencing judge's consideration and weighing of

7   non-statutory aggravating factors with respect to his capital sentence.  Although these claims

8   are disparate, they rely primarily on the same occurrences at sentencing; therefore, the Court

9   sets forth a comprehensive factual background as to both claims.

10      *Factual Background*

11      With respect solely to Claim 9, Petitioner relies upon statements that occurred during

12  his failed attempt to plead guilty.  Against the express advice of counsel, Petitioner decided

13  to plead guilty prior to the beginning of the presentation of evidence at trial.  (RT 3/13/85 at

14  2-34.)  However, Petitioner declined to set forth in open court the factual basis for his guilty

15  plea.  (*Id.* at 16-17.)  Instead, he agreed the court could use his March 8, 1994 statement to

16  the police as the factual basis.  (*Id.* at 17.)  Petitioner told the court that the statement might

17  not be entirely true but that he still wanted to base his guilty plea upon it.  (*Id.* at 17-18.)  The

18  court directed Petitioner to review his statement, after which he identified the portions he

19  considered inaccurate.  (*Id.* at 18-19, 22-34.)  During that discussion, the following exchange

20  took place:

21          THE COURT:  All right.  Before we go all the way through the
        statement, Mr. Schackart, I'm not sure what changes you have made or what
22      you disavow in the statements, but I might save a whole lot of time if you're
        going to tell me that you did actually commit these offenses.
23
            THE DEFENDANT:  No, I'm not going to – to incriminate myself
24      more.

25          THE COURT:  If you would tell me either by this statement or in some
        other fashion, orally or otherwise, that you did, in fact, do what you have pled
26      guilty to –

27          THE DEFENDANT:  Well, if you have been sworn in and pled guilty

28                                  - 12 -

1    to something, then obviously you must be guilty of it, right?

2          THE COURT:  Mr. Schackart, I'm not going to play word games with
     you.
3
           THE DEFENDANT:  It is not a word game, Judge.  I don't feel that I
4    have to go through and incriminate myself any more than I already have.

5          THE COURT:  Well, unless there is a factual basis that you are willing
     to acknowledge that you did, in fact, commit these crimes that you have been
6    charged with in the indictment, then I am not going to accept the plea.  Do you
     understand that?
7
           THE DEFENDANT:  I guess so.  So I guess you can then not accept it
8    because of the numerous statements which I have written down that I have to
     disavow.
9
     (*Id.* at 23-24.)  The court responded, "I am willing to take your plea," and proceeded to
10
     engage Petitioner in a series of questions and a further review of his statement.  (*Id.* at 24-
11
     34.)  After Petitioner disavowed many portions of his statement, the court rejected his plea.
12
     (*Id.*)
13
           Petitioner's counsel expressed concern that jurors would be exposed to media
14
     coverage of Petitioner's attempt to plead guilty.  (*Id.* at 38.)  The judge responded:
15
           I'm not going to assume that they are going to disobey the admonishment of
16         the Court, and, so, we are just going to proceed, you know.

17                I'm not convinced that Mr. Schackart was unaware of the outcome of,
           the probable outcome of this charade this morning before he started it, and I
18         know that he was not unaware of the fact that it would be heavily covered by
           the media.
19
                  So, in any event, I'm going to have the jury in and admonish them once
20         again that, as I did yesterday, about listening to the media or reading the media
           or watching the media accounts of the trial, and we're going to do that right
21         now.

22   (*Id.*)

23         The remaining statements by the judge occurred during sentencing and are relevant

24   to Claims 9 and 10.  The following three statements upon which Petitioner relies were part

25   of the court's discussion of the sentences for kidnapping and sexual assault:

26         The Court has further considered that you have steadfastly refused to
           acknowledge your sexual assault of the victim while at the same time relying
27         on your own statements concerning that sexual assault to Detective Reuter and

28                                           - 13 -

1    to Dr. Bendheim as forming a part of the basis upon which you elicited
2    testimony from Dr. Bendheim for purposes of mitigating the sentencing in this
     action.

3         The Court further finds as an aggravating factor that you have
4    specifically lied to the Court with respect to your depiction of when you
     stuffed the knee sock into the victim's mouth.

5         . . . .

6         . . . [I]t is not probable that you will ever be rehabilitated . . . .

7    (RT 12/7/93 at 18-21.)

8    Next, Petitioner challenges the following statement:

9         You acknowledged that it was your custom to terminate marital
10   arguments unilaterally, and in the event Miss Pajkos, your wife, attempted to
     continue them past your deadline you would then end the argument by
     slapping or hitting her.  You acknowledge forcing yourself upon her in
11   December of 1983 while using a knife to threaten her to comply.

12        The Court finds that the fact that you chose and continue to make her
     the sine qua non of your depraved behavior instead of postulating that *your use*
13   *of her as punching bag and your treatment of her as if she was chattel* may
     have had some significant influence on her actions is unsatisfactory at best and
14   is hardly a mitigating factor.

15   (*Id.* at 23 (emphasis added)[7].)

16   Petitioner challenges several statements the court made during its discussion of the

17   (F)(6) aggravating factor, that the crime was cruel, heinous, or depraved:

18        Your entire manner and demeanor before, during and since this trial,
     your treatment of this process as *merely some new intellectual game* leads this
19   Court to the conclusion that your *only familiarity with remorse is the spelling*
     *and pronunciation of the word.*  You wrote to me, "the knowledge that Charlie
20   is forever gone from this plane of existence is made especially painful by the
     fact that her life literally passed through my hands."

21        You *may think that to have been a clever turn of phrase; I find that it*
22   *is a snide word game describing a foul murder perpetrated by you.*  It speaks
     volumes not of remorse or of respect for Ms. Regan, but of a *mind so*
23   *supercillious [sic] and full of self that it believes it is permissible to be cute*
     *about this crime.*  It says that you committed these crimes with a depraved
24   mind and a malignant heart.

25

─────────────────

26   [7] For the sake of clarity and accuracy the Court has repeated the entirety of these two
     paragraphs, rather than the limited quotation cited by Petitioner.  The italicized language is
27   that upon which Petitioner relies.

28

1   (*Id.* at 26-27 (emphasis added)[8].)  After the court completed its review of the aggravating and

2   mitigating factors and concluded that there was no mitigation sufficiently substantial to call

3   for leniency, it expounded upon the basis for capital punishment in society, including

4   deterrence, stating "while we can only hope that capital punishment will deter others, we

5   know it will deter you."  (*Id.* at 29-30.)

6           *Claim 9 Analysis*

7           Respondents concede this claim of judicial bias is properly exhausted to the extent it

8   is premised on the resentencing hearing.  (Dkt. 47 at 62.)  Petitioner's complaint is limited

9   to a violation of his rights at resentencing; he does not assert a violation relating to trial.

10  Although Petitioner relies on examples from trial to demonstrate the judge's bias, he did so

11  in state court as well.  (Appellant's Revised Opening Br. (CR-93-0535-AP) at 39-44.)  The

12  Arizona Supreme Court did not find these allegations clearly barred to the extent they were

13  tied to the resentencing, *Schackart II*, 190 Ariz. at 256, 947 P.2d at 333; therefore, the Court

14  considers them.  The Arizona Supreme Court denied this claim finding that the incidents

15  upon which Petitioner relied did not demonstrate "bias nor any deep-seated favoritism."  *Id.*

16  at 256-57, 947 P.2d at 333-34.

17          Petitioner appears to argue that his judge was actually biased against him, which

18  would render his sentence fundamentally unfair in clear violation of due process.  *See Bracy*

19  *v. Gramley*, 520 U.S. 899, 905 (1997) (due process requires that a defendant receive a "fair

20  trial in a fair tribunal."); *Arizona v. Fulminante*, 499 U.S. 279, 308-10 (1991) (the presence

21  of an impartial judge is so basic to a fair trial  that its violation is never subject to harmless

22  error review); *In re Murchison*, 349 U.S. 133, 136 (1955).  However, the only Supreme Court

23  case Petitioner cites, *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 59-62 (1972),

24  involved not actual bias but the type of situation the Court subsequently characterized as one

25  "in which experience teaches that the probability of actual bias" is too high to be

26  _____

27          [8] *See supra* note 7.

28                              - 15 -

1  constitutional. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (finding rule necessary to prevent

2  the "probability of unfairness"). In *Withrow*, the Court further explained that "[a]mong these

3  cases are those in which the adjudicator has a pecuniary interest in the outcome and in which

4  he has been the target of personal abuse or criticism from the party before him." *Id.*; *see also*

5  *Taylor v. Hayes*, 418 U.S. 488, 501-03 (1974) (when there are "marked personal feelings .

6  . . present on both sides" arising from the underlying litigation, it violates due process for a

7  judge to hear a subsequent contempt case because he has become embroiled with the litigant

8  and his behavior); *Tumey v. State of Ohio*, 273 U.S. 510, 523, 535 (1927) (finding due

9  process violation because judge, who was also the mayor, had direct pecuniary interest in a

10  conviction as well as motive to increase fine to benefit the town coffers).

11       The Supreme Court has also expressed this rule more generally as "every procedure

12  which would offer a possible temptation to the average man as a judge . . . not to hold the

13  balance nice, clear and true between the State and the accused denies the latter due process

14  of law." *In re Murchison*, 349 U.S. at 136 (quoting *Tumey*, 273 U.S. at 532). Despite the

15  seeming breadth of this principle, in application, the Supreme Court has extended the

16  protections of due process beyond actual bias only in the two limited circumstances identified

17  in *Withrow*: where the judge has an interest in the outcome, or where he has been personally

18  impugned by the litigant leading to a finding of contempt. Petitioner has not alleged, and the

19  record refutes, that either of these circumstances apply with respect to Petitioner's sentencing

20  by Judge Brown. Thus, it was not contrary to nor an unreasonable application of clearly

21  established Supreme Court law for the state court not to presume bias.

22       Petitioner contends that a due process violation is established if there was "a pervasive

23  climate of partiality or unfairness." (Dkt. 52 at 56.) In support of this rule, Petitioner cites

24  two circuit court cases. However, those cases categorize the above-quoted rule as applicable

25  to cases on direct review rather than as a standard for a due process violation. *See Duckett*

26  *v. Godinez*, 67 F.3d 734, 740-41 (9th Cir. 1995) (finding that conduct which might require

27  reversal upon direct review did not rise to the level of fundamental unfairness implicating

28                                    - 16 -

1    due process); *United States v. DeLucca*, 692 F.2d 1277, 1282 (9th Cir. 1982).  Further, as

2    discussed below, the Court's review of the record did not reveal pervasive partiality.

3         Petitioner's burden to demonstrate actual bias is extremely high because there is a

4    presumption that judicial officials have "properly discharged their official duties."  *Bracy*,

5    520 U.S. at 909 (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

6    Additionally, the Supreme Court has held that "only in the most extreme cases would

7    disqualification [for bias or prejudice] be constitutionally required."  *Aetna Life Ins. Co. v.*

8    *Lavoie*, 475 U.S. 813, 821 (1986).  That holding is premised on the ground that "the law will

9    not suppose a possibility of bias or favor in a judge, who is already sworn to administer

10   impartial justice, and whose authority greatly depends upon that presumption and idea."  *Id.*

11   at 820 (quoting 3 W. Blackstone, Commentaries *361).  Further, judges "are assumed to be

12   men of conscience and intellectual discipline, capable of judging a particular controversy

13   fairly on the basis of its own circumstances."  *United States v. Morgan*, 313 U.S. 409, 421

14   (1941).  This principle is particularly salient in this case because none of the instances cited

15   by Petitioner took place in front of the jury, nor was the jury involved in sentencing.  *See*

16   *DeLucca*, 692 F.2d at 1282 (considering that many of the instances cited to support claim of

17   partiality took place outside the jury's presence); *see also Rowsey v. Lee*, 327 F.3d 335, 341-

18   342 (4th Cir. 2003).

19        The Supreme Court has explained that "[j]udicial remarks during the course of a trial

20   that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases,

21   ordinarily do not support a bias or partiality challenge."  *Liteky v. United States*, 510 U.S.

22   540, 555 (1994) (upholding the denial of a recusal motion, which has a lower threshold than

23   a due process violation for bias).  Further, "expressions of impatience, dissatisfaction,

24   annoyance, and even anger" do not alone signal partiality.  *Id.* at 555-56.  The factual

25   instances upon which Petitioner relies amount to comments by the sentencing judge that he

26   disbelieved the defendant, did not find him credible, disliked his attitude or behavior, and

27   found him deserving of the punishment imposed.  Such observations do not implicate bias

28

rising to the level of a due process violation.  Rather, "[t]he judge who presides at trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person"; however, that knowledge and opinion may be "necessary to completion of the judge's task" and the decisions he must render.  *Id.* at 550-51 (citing bench trials as an example of such necessity).  While some of the judge's commentary may have been superfluous, much of it was relevant to the aggravating and mitigating factors presented to the court.  *See infra* discussion Claim 10.  Moreover, conclusions regarding a defendant's credibility and character are squarely within the province of the sentencing judge.

The Arizona Supreme Court's finding that the judge was not biased is entitled to deference.  *See* 28 U.S.C. § 2254(e)(1); *Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997).  More importantly, the cited occurrences and the record as a whole indicate that Petitioner's sentencing was not fundamentally unfair in violation of due process.[9]  Claim 9 is denied.

---

[9] In addition to the facts set forth in the above factual background, Petitioner cites fact paragraph sixty-four of the amended petition.  (Dkt. 39 at ¶ 114.)  That paragraph recites mitigation testimony by Petitioner's expert, Dr. Bendheim, which appears unrelated to this claim.  (*Id.* at ¶ 64.)  The following paragraph, however, addresses the sentencing judge's questioning of Dr. Bendheim, comparing it to "a prosecution cross-examination." (*Id.* at ¶ 65.)  To the extent Petitioner intended to rely on these facts, they do not impact the court's analysis set forth in the body of the Order.  The court's questioning of Dr. Bendheim was allowed by court rule, Ariz. R. Evid. 614(b), comprised only ten pages of the seventy-page testimony, and was reasonable.  (*See* RT 5/3/85 at 51-120.)  The judge explained to counsel that as the finder of fact he felt it necessary to gather additional information to assist in making the sentencing determination.  (*Id.* at 119-20.)  Further, "[q]uestions by a court indicating skepticism are not improper when the witnesses are permitted to respond 'to the district court's expressed concerns to the test [sic] of their ability.'"  *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986) (focusing on the impact of judge's behavior on a jury) (quoting *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1383 (9th Cir. 1984)).  The witness was allowed to fully respond to the court's questions (RT 5/3/85 at 104-14), and the court allowed the defense to conduct additional redirect (*id.* at 114-17).

1

*Claim 10 Analysis*

2      Respondents contend that this claim – alleging the judge relied upon non-statutory

3  aggravating factors in imposing a death sentence – was not properly exhausted and is

4  procedurally defaulted.  Regardless of its procedural status,[10] the Court will dismiss this

5  claim because it is plainly meritless.  *See* 28 U.S.C. § 2254(b)(2) (allowing denial of

6  unexhausted claims on the merits); *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that

7  a stay is inappropriate in federal court to allow claims to be raised in state court if they are

8  subject to dismissal under (b)(2) as "plainly meritless").

9      To the extent Petitioner relies upon the court's statements when sentencing him for

10  kidnapping and sexual assault (RT 12/7/93 at 18-21), these statements were clearly limited

11  to the discussion of non-capital offenses.  Thus, there is no factual basis for Petitioner's

12  argument that the court relied on them as non-statutory aggravation for Petitioner's death

13  sentence.

14      The court's reference to Petitioner treating his wife as a punching bag and as chattel

15  (RT 12/7/93 at 23) occurred during discussion of a statutory aggravating factor – that

16  Petitioner had previously been convicted of a felony involving the use or threat of violence

17  (A.R.S. § 13-703(F)(2)).  The prior felony was Petitioner's assault of his then-wife.  (RT

18  12/7/93 at 21-22.)  The court discussed Petitioner's evidence regarding his ex-wife's

19  character, which focus on her alleged infidelity and lack of veracity and was proffered to

20  mitigate this aggravating factor.  (*Id.* at 22-23.)  The court's comments occurred in its

21

22      [10] Petitioner argues that the Arizona Supreme Court "brushed over" the specific

23  statements by the sentencing judge that are at issue in this claim. (Dkt. 52 at 58.)  As noted

24  by Respondents, Petitioner did not rely on these examples in his appellate brief; rather, he
focused on the court's statements about capital punishment as an expression of society's

25  moral outrage.  (Appellant's Revised Opening Br. (CR93-0535-AP) at 14-15 (citing RT
12/7/93 at 29-30).)  The supreme court reviewed the entirety of the capital sentencing

26  proceeding but focused on the language emphasized by Petitioner in reaching its conclusion

27  that the sentencing judge did not rely on nonstatutory aggravators.  *Schackart II*, 190 Ariz.
at 250, 947 P.2d at 327.

28

1  concluding remark rejecting Petitioner's mitigation related to the statutory aggravating factor.

2  (*Id.* at 23-24.)   Thus, the court did not use this characterization about Petitioner as an

3  aggravating factor; rather, it rejected the arguments Petitioner offered to mitigate a statutory

4  aggravator.  Similarly, the other challenged comments were products of the judge's analysis

5  in support of his finding that Petitioner acted with a depraved mind (RT 12/7/93 at 24-27),

6  which is one prong of the (F)(6) statutory aggravating factor.

7  Finally, the court's statement that capital punishment would act as a deterrent with

8  respect to Petitioner was made after the court completed its review of the statutory

9  aggravating factors and all of the mitigation and determined that there was no mitigation

10  sufficiently substantial to call for leniency.  (*Id.* at 29-30.)  Thus, the Court already had

11  concluded that Petitioner would be sentenced to death.  There is nothing to suggest the court

12  used deterrence as an aggravating factor.

13  "Non-statutory" aggravation evidence is not recognized in Arizona; the only

14  aggravating circumstances allowed to support a death sentence are enumerated in the

15  governing statute, A.R.S. § 13-703(F), and the sentencing court may only consider evidence

16  in aggravation that tends to establish a statutory aggravating factor.  *State v. Gulbrandson*,

17  184 Ariz. 46, 66, 906 P.2d 579, 599 (1995); *State v. Atwood*, 171 Ariz. 576, 673, 832 P.2d

18  593, 656 (1992), *overturned on other grounds by State v. Nordstrom*, 200 Ariz. 229, 25 P.3d

19  717 (2001).  Absent evidence to the contrary, a judge is presumed to focus only on relevant

20  sentencing factors.  *State v. Beaty*, 158 Ariz. 232, 244, 762 P.2d 519, 531 (1988); *Walton v.*

21  *Arizona*, 497 U.S. 639, 653 (1990) ("Trial judges are presumed to know the law and to apply

22  it in making their decisions."), *overturned on other grounds by Ring v. Arizona*, 536 U.S. 584

23  (2002).  The incidents cited by Petitioner fail to rebut the presumption that the sentencing

24  judge did not consider evidence in aggravation that was not relevant to a statutory factor.

25  Additionally, the Arizona Supreme Court conducted a separate, independent review

26  of the aggravating and mitigating factors and determined that Petitioner's death sentence was

27  appropriate.  *Schackart II*, 190 Ariz. at 246, 947 P.2d at 323.  Even if the trial court had

28

committed constitutional error at sentencing, a proper and independent review of the mitigation and aggravation by the state supreme court cured any such defect. *See Clemons v. Mississippi*, 494 U.S. 738, 750, 754 (1990) (holding that appellate courts are able to fully consider mitigating evidence and are constitutionally permitted to affirm a death sentence based on independent re-weighing despite any error at sentencing). In Petitioner's case, the supreme court rejected the (F)(2) factor and the heinous/depraved prong of the (F)(6) factor (the findings during which the judge made the allegedly objectionable statements), reweighed the remaining aggravation and mitigation, and found a death sentence appropriate. *Schackart II*, 190 Ariz. at 251, 261, 947 P.2d at 328, 338.

As a final matter, Petitioner relies on *Lankford v. Idaho*, 500 U.S. 110 (1991), in support of his related argument that he did not receive sufficient notice of the non-statutory aggravation upon which the judge relied. As discussed above, the record is clear that the judge did not rely on non-statutory aggravation regarding the capital sentence. Petitioner does not allege that he received insufficient notice of the statutory aggravating factors alleged by the prosecution and found by the court.

Petitioner is not entitled to relief on Claim 10 and it is denied.

**Claim 11**

Petitioner alleges that his Eighth Amendment right to be free of cruel and unusual punishment was violated by the sentencing court's reliance on the (F)(6) aggravating factor, which he contends is vague and overbroad. Regardless of exhaustion, the Court will dismiss this claim because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2); *Rhines*, 544 U.S. at 277. Petitioner concedes, although he disagrees with the resolution, that the Supreme Court decided this issue against him prior to his resentencing (Dkt. 52 at 59). *See Walton*, 497 U.S. at 655 (upholding Arizona's (F)(6) factor as providing sufficient guidance to the sentencer). Claim 11 is dismissed.

**Claim 12**

Petitioner alleges that it is cruel and unusual punishment to carry out an execution

more than twenty years after the sentence was imposed. Respondents concede this claim is properly exhausted. (Dkt. 47 at 68.) The Arizona Supreme Court rejected the claim during Petitioner's second appeal, *Schackart II*, 190 Ariz. at 259, 947 P.2d at 336; it was further discussed and rejected during Petitioner's PCR proceeding (ROA 167 at 45-49; ROA 185 at 20-21).

Because the Supreme Court has never held that prolonged incarceration prior to execution violates the Eighth Amendment, *see Lackey v. Texas*, 514 U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not been addressed), Petitioner cannot establish a right to federal habeas relief under 28 U.S.C. § 2254(d), *see Allen v. Ornoski*, 435 F.3d 946, 958-60 (9th Cir. 2006). Additionally, numerous circuit courts, including the Ninth Circuit Court of Appeals, have held that prolonged incarceration under a sentence of death does not offend the Eighth Amendment. *See McKenzie v. Day*, 57 F.3d 1493, 1493-94 (9th Cir.) (en banc) (delay of 20 years), *cert. denied*, 514 U.S. 1104 (1995); *White v. Johnson*, 79 F.3d 432, 438 (5th Cir.) (delay of 17 years), *cert. denied*, 519 U.S. 911 (1996); *Stafford v. Ward*, 59 F.3d 1025, 1028 (10th Cir.) (delay of 15 years), *cert. denied*, 515 U.S. 1173 (1995). The above-cited circuit court opinions counter Petitioner's argument, based on *Trop v. Dulles*, 356 U.S. 86, 101 (1958), that evolving standards of decency support his argument. *See Allen*, 435 F.3d at 959. Finally, Petitioner's reliance on international law does not alter the above Eighth Amendment analysis. *See Buell v. Mitchell*, 274 F.3d 337, 370-76 (6th Cir. 2001).

Claim 12 is denied.

**Claim 14**

Petitioner alleges that his rights under the Eighth Amendment and international law were violated by Arizona's death penalty statute and the imposition of a death sentence under the circumstances of his crime, which he contends do not set it apart from the norm of first-degree murder cases. Respondents contend this claim is exhausted to the extent it alleges an Eighth Amendment violation, but procedurally defaulted to the extent it is premised on

international law.  (Dkt. 47 at 71-72.)  The Court agrees.

Petitioner alleges generally a violation of international law but cites to his PCR petition addendum for the specifics of the law at issue.  (Dkt. 39 at 36 (citing ROA 167).)  The only PCR claim based on international law alleged that subjecting Petitioner to the conditions of death row prior to execution was inhumane (ROA 166, 167; ROA 185 at 21); that is the subject of Claim 12, not Claim 14.   Because Petitioner never argued before the Arizona courts that Arizona's death penalty statute in general and his death sentence in particular violate international law, that portion of the claim was not fairly presented.  If Petitioner were to return to state court now to litigate these international law issues, the claim would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion.  *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, these portions of the claim are technically exhausted but procedurally defaulted.  Petitioner has not alleged cause and prejudice or a fundamental miscarriage of justice to excuse the default.  Moreover, because Petitioner never identified in this Court how or what international law was violated, the allegations necessarily fail.

This claim was raised as an Eighth Amendment violation based on *Furman v. Georgia* in Petitioner's second direct appeal (Appellant's Revised Opening Br. (CR-93-0535-AP) at 56); therefore, as conceded by Respondents, that portion of the claim is exhausted.  In *Furman v. Georgia*, 408 U.S. 238 (1972), the Supreme Court held the death penalty statutes of Georgia and Texas to be unconstitutional because they allowed arbitrary and unguided imposition of capital punishment.  Many states subsequently enacted new capital statutes, a number of which survived the Court's further scrutiny in *Gregg v. Georgia*, 428 U.S. 153 (1976).  Observing that the death penalty is "unique in its severity and irrevocability," *id*. at 187, the *Gregg* Court concluded that a death sentence may not be imposed unless the sentencing authority focuses attention "on the particularized nature of the crime and the particularized characteristics of the individual defendant."  *Id.* at 206.  In imposing the death

sentence, the sentencer must find the presence of at least one aggravating factor and then weigh that factor against the evidence of mitigating factors.  *Id*.  The Court refined these general requirements in *Zant v. Stephens*, 462 U.S. 862, 877 (1983), holding that a constitutionally valid capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."  A death penalty scheme must provide an "objective, evenhanded and substantively rational way" for determining whether a defendant is eligible for the death penalty.  *Id.* at 879.

In addition to the requirements of determining eligibility for the death penalty, the Court has imposed a separate requirement for the selection decision, "where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence."  *Tuilaepa v. California*, 512 U.S. 967, 972 (1994).  "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime."  *Zant*, 462 U.S. at 879.  Accordingly, a statute that "provides for categorical narrowing at the definition stage, and for individualized determination and appellate review at the selection stage" will ordinarily satisfy Eighth Amendment and Due Process concerns, *id*., so long as the state ensures "that the process is neutral and principled so as to guard against bias or caprice."  *Tuilaepa*, 512 U.S. at 973.

Defining specific "aggravating circumstances" is the accepted "means of genuinely narrowing the class of death-eligible persons and thereby channeling the [sentencing authority's] discretion."  *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988).  Each defined circumstance must meet two requirements.  First, "the [aggravating] circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of a murder."  *Tuilaepa*, 512 U.S. at 972; *see Arave v. Creech*, 507 U.S. 463, 474 (1993).  Second, "the aggravating circumstance may not be unconstitutionally vague."  *Tuilaepa*, 512 U.S. at 972; *see Arave*, 507 U.S. at 473; *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

Arizona's death penalty scheme allows only certain, statutorily defined, aggravating circumstances to be considered in determining eligibility for the death penalty. A.R.S. § 13-703(F). "The presence of aggravating circumstances serves the purpose of limiting the class of death-eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by [the sentencer]." *Blystone v. Pennsylvania*, 494 U.S. 299, 306-07 (1990). Not only does Arizona's sentencing scheme generally narrow the class of death-eligible persons, the aggravating factors delineated in § 13-703(F) do so specifically. Rulings of the United States Supreme Court and the Ninth Circuit have upheld Arizona's death penalty statute against challenges that particular aggravating factors, including § 13-703(F)(6) (heinous, cruel and depraved), do not adequately narrow the sentencer's discretion. *See Lewis v. Jeffers*, 497 U.S. 764, 774-77 (1990); *Walton*, 497 U.S. at 655-56; *Woratzeck v. Stewart*, 97 F.3d 329, 335 (9th Cir. 1996). The Ninth Circuit has explicitly rejected the argument that Arizona's death penalty statute is unconstitutional because "it does not properly narrow the class of death penalty recipients." *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir. 1998).

There is no federal constitutional right to proportionality review of a death sentence, *McCleskey v. Kemp*, 481 U.S. 279, 306 (1987) (citing *Pulley v. Harris*, 465 U.S. 37, 43-44 (1984)), and the Arizona Supreme Court discontinued the practice in 1992, *State v. Salazar*, 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992). The Ninth Circuit has explained that the interest implicated by proportionality review – the "substantive right to be free from a disproportionate sentence" – is protected by the application of "adequately narrowed aggravating circumstance[s]." *Ceja*, 97 F.3d at 1252.

Finally, clearly established federal law holds that the death penalty does not constitute cruel and unusual punishment. *Gregg*, 428 U.S. at 169; *see also Roper v. Simmons*, 543 U.S. 551, 568-69 (2005) (noting that the death penalty is constitutional when applied to a narrow category of crimes and offenders).

Both the trial court and the Arizona Supreme Court decided that a death sentence was

1   appropriate after reviewing the evidence in support of the asserted statutory aggravating

2   factor(s), recounting the proven statutory and nonstatutory mitigating factors presented by

3   Petitioner, and weighing them against one another (RT 12/7/93 at 21-29). *Schackart II*, 190

4   Ariz. at 246-254, 260-61, 947 P.2d at 323-331, 337-38. For all of these reasons, Claim 14

5   is denied.

6       **Claim 15**

7       Petitioner alleges that his Eighth and Fourteenth Amendment rights were violated by

8   the denial of a jury determination of all the facts necessary for the imposition of a death

9   sentence. Although Respondents contest exhaustion, the Court will dismiss the claim

10  because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2); *Rhines*, 544 U.S. at 277.

11      This claim is premised on *Ring v. Arizona*, 536 U.S. 584, 609 (2002), which found

12  that Arizona's aggravating factors are an element of the offense of capital murder and must

13  be found by a jury. However, in *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme

14  Court held that *Ring* did not apply retroactively to cases already final on direct review.

15  Petitioner contends his case was not final because he was pursuing relief under Arizona Rule

16  of Criminal Procedure 32. The Supreme Court has made clear that, for purposes of

17  retroactivity, a case is "final" after conviction, exhaustion of direct appeal availability, and

18  elapse of the time for a petition for certiorari. *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6

19  (1987). The Arizona Supreme Court has adopted that analysis, holding that capital cases in

20  which the direct appeal mandate has issued, even if pending in a Rule 32 proceeding, are

21  final and not entitled to relief premised on *Ring*. *State v. Towery*, 204 Ariz. 386, 389-90,

22  394, 64 P.3d 828, 831-32, 836 (2003). Because Petitioner's direct appellate review was final

23  prior to *Ring*, he is not entitled to relief premised on that ruling. Claim 15 is dismissed on

24  the merits.

25      **Claim 16**

26      Petitioner alleges his right to equal protection was violated by the failure to have a

27  jury make all necessary factual determinations for a sentence of death because non-capital

28                                          - 26 -

1    defendants are afforded that right.  Respondents concede this claim was properly exhausted.

2    (Dkt. 47 at 77.)  The Arizona Supreme Court summarily rejected this claim citing *Jeffers v.*

3    *Lewis*, 38 F.3d 411, 419 (9th Cir. 1994).  *Schackart II*, 190 Ariz. at 260, 947 P.2d at 338.

4          In support of this claim, Petitioner cites a dissenting opinion in *Harris v. Alabama*,

5    513 U.S. 504, 515 (1995) (Stevens, J., dissenting).  As Respondents note, *Harris* was not an

6    equal protection case; rather, it was an Eighth Amendment case in which the majority found

7    that judge-imposed capital sentences were constitutional.  *Harris*, 513 U.S. at 515.  Petitioner

8    fails to cite, and the Court is not aware of, any clearly established Supreme Court law in

9    support of his position; therefore, he cannot obtain relief on this claim.  *See Musladin*, 549

10   U.S. at 77.  In addition, the Ninth Circuit has explicitly rejected the claim.  *Jeffers*, 38 F.3d

11   at 419 (noting that judicial sentencing is rational as it is potentially more consistent than jury

12   sentencing) (quoting *Proffitt v. Florida*, 428 U.S. 242, 252 (1976)).

13         Claim 16 is dismissed.

14                          **CERTIFICATE OF APPEALABILITY**

15         In the event Petitioner appeals from this Court's judgment, and in the interests of

16   conserving scarce resources that might be consumed drafting and reviewing a request for a

17   certificate of appealability (COA) to this Court, the Court on its own initiative has evaluated

18   the claims within the petition for suitability for the issuance of a certificate of appealability.

19   *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

20         Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an appeal

21   is taken by a petitioner, the district judge who rendered the judgment "shall" either issue a

22   COA or state the reasons why such a certificate should not issue.  Pursuant to 28 U.S.C.

23   § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of

24   the denial of a constitutional right."  This showing can be established by demonstrating that

25   "reasonable jurists could debate whether (or, for that matter, agree that) the petition should

26   have been resolved in a different manner" or that the issues were "adequate to deserve

27   encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing

28                                         - 27 -

1   *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will

2   issue only if reasonable jurists could debate whether (1) the petition states a valid claim of

3   the denial of a constitutional right and (2) the court's procedural ruling was correct.  *Id.*

4           In a prior order, the Court determined that reasonable jurists could debate its

5   resolution of Claims 5 and 6(a) (Dkt. 101 at 18); therefore, those claims will be included in

6   the COA.  The Court finds that reasonable jurists, applying the deferential standard of review

7   set forth in the AEDPA, which requires this Court to evaluate state court decisions in light

8   of clearly established federal law as determined by the United States Supreme Court, could

9   not debate its resolution of Petitioner's claims as set forth in this Order or its order of

10  September 14, 2005 (Dkt. 75).

11          Accordingly,

12          **IT IS ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus

13  (Dkt. 39) is **DENIED**.  The Clerk of Court shall enter judgment accordingly.

14          **IT IS FURTHER ORDERED** that the stay of execution entered on June 6, 2003

15  (Dkt. 3) is **VACATED**.

16          **IT IS FURTHER ORDERED GRANTING** a Certificate of Appealability as to the

17  following issues:

18                  Whether Claim 5 – alleging that Petitioner's right to a fair and impartial
19          jury was violated – fails on the merits.

20                  Whether Claim 6(a) – alleging ineffective assistance of counsel for
            failing to develop a proper factual record regarding the partiality of the jury –
21          fails on the merits.

22          **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order

23  to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

24          DATED this 13th day of March, 2009.

25

26

27  *copy to Clerk, Arizona Supreme Court 3/16/09 by cjs*

David C. Bury
United States District Judge

28                                      - 28 -